**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NAV CONSULTING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:22-CV-03624 |
| v. ) | |
| ) | |
| ABHISHEK KUMAWAT and ) | Judge Edmond E. Chang |
| FORMIDIUM CORP., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

NAV Consulting Inc. sued Abhishek Kumawat and Formidium Corp. (formerly known as Sudrania Fund Services, or SFS) after Kumawat left his job at NAV to join Formidium, which is one of NAV's competitors. R. 1, Compl.[1] Earlier in the case, the Court granted in part NAV's motion for a preliminary injunction on its breach of contract and trade-secret claims. R. 112, Order 03/31/23. NAV now moves for attorneys' fees and costs for the preliminary injunction motion. R. 129, Fees Mot. NAV also moves for contempt and sanctions against Kumawat and Formidium. R. 168, Contempt Mot.; R. 237, Sanctions Mot. As explained below, NAV's motion for attorneys' fees is denied at this stage of the litigation. The Court orders an evidentiary hearing to address the contempt and sanctions allegations.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. Any citations to the sealed versions of the docket entries will be identified with the parenthetical "(sealed)." Otherwise, in the absence of any parentheticals, all citations are to the public versions of the docket entries. The Court has subject matter jurisdiction over this case under 28 USC § 1331 for the federal trade-secrets act claim, and supplemental jurisdiction under 28 USC § 1367 for the state law claims.

## I. Background

Kumawat began working for NAV in December 2007 and left the company in July 2022. Compl. ¶¶ 20, 24. In November 2020, Kumawat entered into an Employment Agreement with NAV for an employment term of five years that included a covenant not to compete and a non-disclosure provision. *Id.* ¶ 33; R. 129-2, Fees Mot., Exh. 2, Emp. Agr. The non-compete prevented Kumawat from performing duties similar to those he had in the most recent two years of his work at NAV. Emp. Agr. at 14–15 (PDF page citation). In May 2022, before the five-year term ended, Kumawat left NAV to join Formidium, one of NAV's competitors. Compl. ¶¶ 47–48, 57, 59; Order 03/31/2023 at 4. NAV sued Kumawat and Formidium for breach of contract, violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1, violation of the federal Defend Trade Secrets Act, 18 U.S.C § 1836, and tortious interference with contractual relations. Compl. at 18–34.

NAV then moved for a preliminary injunction, R. 6, Prelim. Inj. Mot., which the Court granted in part after holding an evidentiary hearing, Order 03/31/2023. NAV now seeks attorneys' fees and costs for the preliminary injunction, Fees Mot.; an order to show cause why Kumawat and Formidium should not be held in civil contempt for allegedly violating the Preliminary Injunction Order, Contempt Mot.; and sanctions against Kumawat and Formidium for providing allegedly false testimony and withholding relevant discovery, Sanctions Mot.

## II. Legal Standard

**Fees.** "Illinois follows the 'American Rule' of litigation, under which successful parties are generally responsible for their own attorneys' fees unless a statute or contract provides otherwise." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 719, 734 (7th Cir. 2010) (citing *Taylor v. Pekin Ins. Co.*, 899 N.E.2d 251, 256 (Ill. 2008)). The Court must "strictly construe contractual provisions permitting the award of attorneys' fees." *Id.* (citing *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. App. Ct. 2001)). Ultimately, the decision to award fees and costs is "within trial courts' sound discretion." *Id.*

**Contempt.** To be held in civil contempt, a party "must have violated an order that sets forth in specific detail an unequivocal command from the court." *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001); *see Seventh Ave., Inc. v. Shaff Int'l, Inc.*, 909 F.3d 878, 880 (7th Cir. 2018). "To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

**Sanctions.** Federal courts have inherent authority to sanction litigants "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). If misconduct happens, then a wide range of sanctions are available,

up to and including dismissal of an action (or entry of default judgment)—but courts must exercise their inherent power to sanction "with restraint and discretion." *Id.* at 44. To impose sanctions, a federal court must find by a preponderance of the evidence that "the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776–79 (7th Cir. 2016) (rejecting a clear-and-convincing evidence requirement for sanctions imposed under both Rule 37 and the court's inherent authority). "Mere clumsy lawyering is not enough" to merit the imposition of sanctions. *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018).

## III. Analysis

### A. Fees and Costs

NAV seeks an order for $803,429.79 in attorneys' fees and costs associated with its motion for preliminary injunction. Fees Mot. at 7. NAV argues that it is entitled to fees and costs under the Employment Agreement because this Court granted in part NAV's preliminary injunction motion. *Id.* at 3–6. Kumawat and Formidium respond that NAV is not entitled to fees and costs because NAV did not prevail on all aspects of its motion for preliminary injunction, there has not been a final determination on the merits of the case, and even if fees and costs are awarded to NAV, the requested fees are excessive. R. 137, Defs.' Fees Resp.

Kumawat's Employment Agreement with NAV includes a fee-shifting provision. Emp. Agr. at 17. Under Paragraph 9 of the agreement, titled "Injunctive Relief," Kumawat "agree[d] that in the event the Company institutes an action to enforce

4

and/or prosecute this Agreement … the Company shall be entitled to recover from Employee its reasonable attorneys' fees and costs if successful in such action." *Id.* Kumawat and Formidium cite cases interpreting the meaning of "prevailing party" in private contracts and under statutes allowing for recovery of fees to argue that NAV is not entitled to fees and costs because the Court only granted NAV's motion in part. Defs.' Fees Resp. at 2–6 (citing *Raffel v. Medallion Kitchens of Minn., Inc.*, 139 F.3d 1142, 1145 (7th Cir. 1998); *Powers*, 761 N.E.2d at 240). In response, NAV points out that the parties' agreement contemplated fees for a party "successful in such action," and did not include the term "prevailing party." R. 148, Pl.'s Fees Reply at 4–6.

But because contractual fee-shifting provisions are construed narrowly, and ambiguities in contracts "must be resolved against the drafter" (here NAV), *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (quoting *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 368 (Ill. 1998)), the Court declines to grant fees and costs at this stage of the litigation. An "action to enforce and/or prosecute" the agreement is more reasonably interpreted as the *entire* lawsuit, and although the Court granted (in part) NAV's motion for preliminary injunction, NAV is not yet "successful in [this] action." *See* Emp. Agr. at 17. The parties continue to conduct discovery and litigate the merits of their respective claims and defenses. The Court has not decided whether—if any—trade secrets were misappropriated, and whether Kumawat or Formidium breached or interfered with Kumawat and NAV's Employment Agreement. Awarding fees and costs now would be premature under the Employment Agreement. There is not yet a "successful" party in the "action" as required by the

5

Employment Agreement to recover fees and costs. *See id.* Having said that, the parties should give serious consideration to how fee-shifting might impact the risks of this litigation.

### B. Contempt and Sanctions

On NAV's motions for contempt and sanctions, the Court orders an evidentiary hearing to determine: first, whether the testimony offered at the preliminary injunction hearing about Kumawat's job activities at Formidium at the time of the hearing was truthful; and second, not confined to the time of the hearing, what Kumawat's job activities have been and currently are at Formidium. In preparation for this hearing, both parties are allowed to take depositions on the witnesses who would testify. As explained below, this includes another deposition of Kumawat, and the employees whose affidavits NAV submitted in support of its motion for contempt.[2] The factual allegations in NAV's motions are sufficient to require a hearing, but the motions cannot be decided without testing the credibility of the parties' witnesses, as explained next.

### 1. Contempt

NAV's motion for contempt alleges that Kumawat and Formidium violated the Preliminary Injunction Order. Contempt Mot. NAV claims that it is entitled to a another deposition of Kumawat, additional production of documents, fees and costs, and also requests that a fine be imposed on Kumawat and Formidium. *Id.* at 4. After the

---

[2]Since the parties briefed their motions for contempt and sanctions, the magistrate judge has ordered redepositions for both sides. R. 327, Order 8/14/24. Further depositions are allowed consistent that order and this Opinion.

hearing on NAV's preliminary injunction motion, the Court ordered Kumawat to "regularly update NAV on the scope of his efforts" relating to "new product development" by "disclos[ing] to NAV a representative sample of records reflecting Kumawat's work on new products, as well as provide an interrogatory describing under oath what he is doing in this category of work" through reports every 21 days. Order 03/31/23 at 27. The Court also enjoined Formidium, Kumawat, and "anyone acting in concert with them" from "contacting or soliciting any customer or prospective customer listed in NAV Consulting's shared inbox to which Kumawat previously had access" and "contacting or maintaining customer relationships with any client of Formidium in any type of direct, client-facing sales role." *Id.* Finally, the Court forbade Kumawat from "perform[ing] any role at Formidium which requires customer sales, account-relationship maintenance, or direct client-facing engagement; involves anti-money laundering (AML) practices and hedge fund accounting compliance; or involves compliance-monitoring efforts." *Id.* at 28. The Court issued this injunction after determining that "NAV's client information, compliance processes and products, and business strategy are protectable trade secrets." *Id.* at 26.

NAV alleges that Kumawat and Formidium violated the Order by providing overly brief reports with insufficient accompanying records about Kumawat's work on new product development. R. 169, Pl.'s Contempt Br. at 3–5. NAV also submits affidavits from two NAV employees stating that Kumawat has performed work at Formidium since the injunction's issuance involving compliance and client-facing work, in violation of the Order. *Id.* at 6–7. Kumawat and Formidium respond that

7

because NAV has not shared the list of clients referenced in the Court's Order, they cannot comply with the Court's instructions; their reports complied with the Order, which only required a representative sample of records; and the affidavits proffered by NAV should be discounted because of the allegedly suspicious circumstances in which NAV sought out the information averred to. R. 188, Defs.' Contempt Resp.[3]

Beginning with the parties' disagreements on the reports, the Order required Kumawat and Formidium to submit reports about work on new product development every 21 days supported by a "representative sample" of documents. Order 03/31/2023 at 27. The purpose of this Order was to ensure that Kumawat could continue his employment with Formidium but minimize the risk of disclosing and using protected trade secrets. *Id.* at 26. Kumawat and Formidium first submitted a report describing eight projects that Kumawat was working on, R. 189-2, Defs.' Contempt Resp., Exh. A (sealed), and then subsequent reports providing the same descriptions, *see, e.g.*, R. 189-2, Defs.' Contempt Resp., Exh. J (sealed), or stating that there were "no updates or changes" to his work, *see, e.g.*, R. 189-2, Defs.' Contempt Resp., Exh. G (sealed).[4] After receiving a report stating that Kumawat would be out of office in April 2023, NAV alleges that it did not learn that he had returned to work until NAV's

---

[3]The Defendants also sought to stay the contempt motion pending the Court's ruling on NAV's motion to compel, Defs.' Contempt Resp. at 3–4, but because the motion to compel has been decided, this argument is now moot, *see* R. 205, Order 12/12/23.

[4]Although the Court denotes when the Opinion cites to a sealed exhibit with the parenthetical (sealed), nothing in this Opinion discloses information that could possibly overcome the Seventh Circuit's high bar for sealing facts that are relied on for judicial decision-making. *Baxter Int'l v. Abbott Laboratories*, 297 F.3d 544, 546–47 (7th Cir. 2002). So no redactions appear in this Opinion.

counsel inquired about Kumawat's return to work in June 2023. R. 170, Pl.'s Contempt Br. at 5 (sealed); R. 189-2, Defs.' Contempt Resp., Exh. E at 4 (sealed); R. 189-2, Defs.' Contempt Resp., Exh. H (sealed). NAV also argues that only three of the reports included records, and the total six emails provided do not satisfy the Order's requirement for "representative" supporting documents. Pl.'s Contempt Br. at 4–5 (sealed); *see* R. 189-2, Defs.' Contempt Resp., Exhs. A, L, N (sealed).

The Court evaluates the dispute over the sufficiency of the reporting in light of affidavits from Vivek Agarwal and Navneet Lakhani averring that Kumawat is involved in compliance and client-facing work, in violation of the Court's Order. R. 170-2, Agarwal Decl. (sealed); R. 170-3, Lakhani Decl. (sealed). Agarwal, the Senior Vice President of NAV, avers that during an interview with a then-current Formidium employee applying for a job at NAV, the candidate stated that he worked with Kumawat. Agarwal Decl. ¶ 6 (sealed). According to Agarwal, the candidate stated that Kumawat participated in bi-weekly meetings involving compliance issues, and was involved in onboarding clients at Formidium. *Id.* ¶¶ 7–9 (sealed). Lakhani, a current NAV employee and former Formidium employee, averred that between May and August 2023 he attended meetings with Kumawat about "connecting Formidium's Seamless fund accounting software with its investor compliance software, CommonSubDoc" and Kumawat "actively participated in these meetings" and "provided instructions regarding how the CSD investor compliance software component of the project should be enhanced." Lakhani Decl. ¶¶ 2–5 (sealed). In response, the Defendants "categorically deny the allegation that Kumawat engaged in work that violated

9

the Order," citing to Kumawat's declaration that he does not have any "external client facing duties or role" and does not "have any role whatsoever in Formidium's compliance projects." Defs.' Contempt Resp. at 10; R. 189-2, Exh. Q, Kumawat Decl. ¶¶ 6–7 (sealed). But beyond these broad-sweeping statements, Kumawat and Formidium do not provide any specific details about Kumawat's involvement (or lack thereof) in compliance or client-facing work to rebut Agarwal and Lakhani's affidavits. The Defendants' reports and supporting documents likewise do not dispel the concern that Kumawat and Formidium may have violated the Preliminary Injunction Order because Kumawat and Formidium erred on the side of fewer, rather than more, details in their reporting.

The Preliminary Injunction Order prohibited Kumawat from working on "customer sales, account-relationship maintenance, or direct client-facing engagement" and work involving "anti-money laundering (AML) practices and hedge fund accounting compliance" and "compliance-monitoring efforts." Order 03/31/2023 at 28. NAV has proffered sufficient evidence that Kumawat did not comply with the Order in his work activities following the issuance of the Order, at least in May through August of 2023. *See* Lakhani Decl. ¶¶ 2–5 (sealed). The reporting requirement thus may not have had its intended effect. Given the possible inconsistencies in Kumawat's testimony about his job duties at Formidium, another deposition of Kumawat is warranted,[5] and an evidentiary hearing is necessary to determine whether Kumawat and

---

[5]Kumawat and Formidium argue that "*allegedly* violating" the Order does not entitle NAV to another deposition. *See* Defs.' Contempt Resp. at 11 (emphasis in original). But Agarwal and Lakhani's declarations, together with the later-received discovery discussed

Formidium violated the Preliminary Injunction Order, either by failing to accurately and adequately report Kumawat's work on new product development or by engaging in work prohibited by the Order. In preparation for this hearing, the parties may also depose any other witnesses, including Agarwal, the candidate whom Agarwal interviewed, and Lakhani. In deciding the contempt motion, the Court will determine whether the violations, if any, were material and whether Kumawat and Formidium made "reasonable and diligent effort[s] to comply" with the Order. *See U.S. SEC v. Hyatt*, 621 F.3d at 692. The need for another deposition of Kumawat and an evidentiary hearing is further supported by the allegations in NAV's later-filed sanctions motion, which the Court turns to below.

There is one further issue between the parties on the contempt motion. Kumawat and Formidium argue that they cannot comply with the Order because NAV is unwilling to share the client list referenced in the Order. Order 03/31/23 at 27; Defs.' Contempt Resp. at 3. The Court understands that Kumawat and Formidium's proposed solution of an "Attorneys' Eyes Only" designation for the list may be unworkable. *See* R. 199, Pl.'s Contempt Reply at 9. But unless NAV finds another solution—for example, by sharing that information with one designated executive at Formidium (perhaps Kumawat)—it will be up to NAV to prove both that Kumawat knew the clients he allegedly worked with in violation of the Order were named in the inbox, and that Kumawat remembered that fact. Just because NAV has yet to achieve

---

below in the context of sanctions, raise more than the mere possibility that Kumawat and Formidium have not complied with the Order—though this factual determination must be tested at a hearing—so another deposition is necessary.

11

a resolution with Kumawat and Formidium on this issue does not impute knowledge of the client list to Kumawat. *See id.*

### 2. Sanctions

Five months after NAV moved for contempt for alleged violations of the Preliminary Injunction Order, NAV moved for sanctions against Kumawat and Formidium. Pl.'s Sanctions Mot. In the intervening time, the parties exchanged discovery. NAV alleges that emails produced in discovery show that Kumawat and Nilesh Sudrania (the CEO of Formidium) provided false testimony both in depositions and during the preliminary injunction hearing, and withheld relevant discovery before the hearing. Pl.'s Sanctions Mot. ¶¶ 1–2. NAV asks that the Court order Kumawat to resign from Formidium, Formidium to provide NAV with the client information Kumawat allegedly shared with Formidium, an extension of the restrictive covenants of the Employment Agreement by two years until July 2026, costs and fees for NAV, and default judgment against Kumawat and Formidium on the breach of contract and tortious interference claims. *Id.* ¶ 9.

Just as for the contempt motion, NAV has proffered sufficient evidence to require an evidentiary hearing, during which the credibility of the parties' assertions must be tested. First, NAV identifies an email chain from August 2022 with the subject line "NAV Campaign – Email Template." R. 240-1, Pl.'s Sanctions Br., Exh. K (sealed). Armit Arora sent an email to Ishan Sharma with a template for an email to recruit new clients. *Id.* (sealed). At the top of the email, Arora states "Target List – Abhishek [Kumawat] to provide in phases." *Id.* (sealed). Replying to the email,

12

Kumawat attached multiple excel sheets listing funds and their contact information, apparently for Formidium to contact and drum up new clients. *See id.*; R. 240-1, Pl.'s Sanctions Br., Exhs. L, O, Q, S, U (sealed). NAV contends that this email shows that Kumawat and Sudrania lied under oath, because they testified that Kumawat did not work with Formidium's business development department, clients, or prospective clients. Pl.'s Sanctions Br. at 11 (sealed). NAV also argues that the email chain should have been produced in response to the Court-ordered pre-hearing requests to Kumawat for "[a]ny and all Documents and Communications between You and any other Person … relating to any aspect of NAV's business, including but not limited to its compliance services, anti-money laundering officer services, fund accounting services, and RTA functions, prospecting leads, and its Confidential Information and/or Trade Secrets," and "[a]ll Documents in Your possession that contain NAV Confidential Information or Trade Secrets and/or that are derived directly or indirectly from any NAV Confidential Information or Trade Secrets." R. 280, Pl.'s Sanctions Reply at 3–4 (sealed); *see* R. 31, Order 09/12/2022 at 6. NAV also argues this email chain should have been produced in response to the Court's order to Formidium to disclose "[a]ny and all Documents and Communication between You and Abhishek Kumawat that relate to NAV, NAV's operations, NAV's business plans, NAV's sales, NAV's business practices, NAV's customers and/or clients, and/or NAV's Confidential Information and/or Trade Secrets, including information relating to its employees, such as hiring information, wage rates, salaries, benefits, deployment, performance, and any other personnel information, including the date(s) on which such Communications

13

occurred, times and methods." Pl.'s Sanctions Reply at 3–4 (sealed); *see* Order 09/12/22 at 8. Kumawat and Formidium respond that this email chain is consistent with Kumawat's testimony, because Kumawat's role was limited to sending publicly available SEC data about hedge funds to the marketing team. R. 268, Defs.' Sanctions Resp. at 13–14 (sealed).

During his deposition, Kumawat testified that he interacted with the business development department "if they ask me any kind of data analytics" and "if that comes under my role, I will do that." R. 240-4, Kumawat Dep. at 234:24–235:4 (sealed). When asked whether the business development department had asked Kumawat for any data analytics he responded "I would say no." *Id.* at 235:5–8 (sealed). When asked whether he had worked with any of Formidium's existing or prospective clients, Kumawat answered "no." *Id.* at 238:20–239:5 (sealed). But Kumawat also stated that he worked on a project on data analytics, summarizing information about advisers registered with the SEC. *Id.* at 199:9–200:16, 216:9–15 (sealed). During Sudrania's deposition, he stated that he "didn't really need" Kumawat for business development. R. 240-5, Sudrania Dep. at 23:20–21 (sealed). Sudrania also responded that Kumawat did not work with the business development department, clients, or prospective clients, when asked whether Kumawat worked with the business development department "right now" in his "current role," or "currently worked" with clients "right now." *Id.* at 138:6–16, 141:12–17 (sealed). During the preliminary injunction hearing, Kumawat similarly testified that he did not work with clients or prospective clients. R. 240-7, Hearing Tr. at 175:24–176:1, 176:17–19, 177:6–8 (sealed).

14

But the email chain directing Kumawat to provide a "target list" of funds for Formidium's "NAV Campaign" to recruit new clients is sufficient to call into question Kumawat and Sudrania's testimony denying Kumawat's involvement with the business development department and work involving clients or prospective clients. *See* Pl.'s Sanctions Br., Exh. K (sealed).

Next, NAV alleges that emails from July, August, and September 2022 show that Kumawat worked with the sales team on prospecting client leads and interacted directly with clients. Pl.'s Sanctions Br. at 9 (sealed) (citing R. 240-1, Pl.'s Sanctions Br., Exhs. W, F, JJ, H–J, W, Y–AA, EE, NN (sealed)). Kumawat and Formidium respond that some of these emails involve contacts with vendors, and not clients, and others relate to non-sales tasks and thus do not violate the Court's Order. Defs.' Sanctions Resp. at 16. These emails do not, on their face, show definitively whether Kumawat was working in a client-facing role in violation of the Preliminary Injunction Order. For example, NAV argues that Exhibit F—emails between Kumawat and Kyle Crystal from Eastborough Capital—shows Kumawat "is interacting directly with a client regarding certain technology offerings for Formidium." Pl.'s Sanctions Br. at 9 (sealed). Kumawat in his Declaration states that this email chain "generally relate[s] to my projects to integrate third-party software so that it talks to Formidium software, with *vendors*." R. 268-2, Kumawat Decl. ¶ 15 (sealed) (emphasis added). The Court cannot resolve these kinds of competing factual allegations solely on the basis of the emails, in absence of a hearing.

15

Finally, NAV alleges that emails show Kumawat had compliance-related duties at Formidium and worked on the CommonSubDoc product, contradicting his deposition and hearing testimony that he did not perform any compliance duties or work on CommonSubDoc. Pl.'s Sanctions Br. at 9 (sealed). The Defendants respond that Kumawat and Sudrania accurately disclosed Kumawat's CommonSubDoc work, and their responses at the time of the depositions were truthful because the exhibits only involve the period of July through September 2022. Defs.' Sanctions Resp. at 15–16.[6] Exhibits D, E, G, X, GG, LL, and KK all appear to involve discussion of Formidium's compliance software, CommonSubDoc. In one email, Sudrania instructed Kumawat to "understand this project (mapping of CSD and Seamless)" and to "take ownership of this from [the] business side." R. 240-1, Pl.'s Sanctions Br., Exh. D (sealed). Another email invites Kumawat to a meeting "to discuss what will be presented to clients about Formidium marketplace per the email string below," referring to an email from a client (although not addressed to Kumawat) expressing interest in the CommonSubDoc product. R. 240-1, Pl.'s Sanctions Br., Exh. KK (sealed). At his deposition, when asked whether he worked with CommonSubDoc, Kumawat answered "[n]o." Kumawat Dep. at 224:4–5, 227:1–3 (sealed). Kumawat also denied having "any interaction" with the compliance department. *Id.* at 234:21–23 (sealed). Despite these answers, the Defendants argue that this work was appropriately disclosed, because at his deposition, Kumawat also stated in general terms (apparently referring to his CommonSubDoc work) that "for integration that is needed," he "can work on it." *Id.*

---

[6]The Court notes that Exhibits KK and LL include emails dated as late as October 22, 2022. R. 240-1, Pl.'s Sanctions Br., Exhs. KK, LL.

16

231:19–24 (sealed); *see* Defs.' Sanctions Resp. at 15. But in the same line of questioning as to whether he would work on CommonSubDoc in the future, Kumawat also said "I don't think so" and "I'm not aware of anything right now." Kumawat Dep. at 231:14–18, 232:1–4 (sealed). In contrast, Sudrania stated that Kumawat is "building the data analytics within [CommonSubDoc]." R. 268-1, Sudrania Dep. at 71:19–24 (sealed). Again, this conflicting testimony, in light of the emails produced in discovery, must be tested at a hearing, both to determine whether the prior testimony was truthful, and whether Kumawat continued to work on compliance activities in violation of the Preliminary Injunction Order.

In summary, NAV has proffered sufficient evidence, particularly considering the NAV campaign email and the CommonSubDoc emails, to require a hearing on the motion for sanctions.[7] The purpose of this hearing will be to determine what Kumawat's job activities actually are and have been at Formidium, both leading up to and after the preliminary injunction hearing. At this hearing, the Court will evaluate whether Kumawat and Sudrania provided accurate testimony. NAV also seeks sanctions based on Kumawat and Formidium's failure to produce documents in discovery, but because at least some of those decisions are dependent on factual findings to be made at the evidentiary hearing, the Court will not definitively decide the contempt or sanctions motion until the hearing is conducted.

---

[7] As discussed above, these allegations may also put into question Kumawat and Formidium's "categorical" denial of any client-facing or compliance work in their response to NAV's motion for contempt. *See* Defs.' Contempt Resp. at 10; Defs.' Contempt Resp., Exh. Q, Kumawat Decl. ¶¶ 6, 7.

17

On a related matter, NAV's motion, R. 302, on the continued applicability of the Preliminary Injunction Order, is granted. The Order held that "NAV's client information, compliance processes and products, and business strategy are protectable trade secrets." Order 03/31/2023 at 26. The Order required reports on Kumawat's work involving new product development every 21 days because the risk of using or disclosing this protected trade-secret information was "highest" in that work. *Id.* at 27. The reporting requirement thus is not tied to the Employment Agreement's restrictive covenant, and instead was ordered based off the trade-secrets claims, meaning that it would not expire just because the covenant does. The other aspects of the Preliminary Injunction Order (banning Kumawat from "contacting or soliciting any customer or prospective customer listed in NAV Consulting's shared inbox," "contacting or maintaining customer relationships with any client of Formidium in any type of direct, client-facing sales role," and performing "any role at Formidium which requires customer sales, account-relationship maintenance, or direct client-facing engagement; involves anti-money laundering (AML) practices and hedge fund accounting compliance; or involves compliance-monitoring efforts," *id.* at 28), also in part are premised on the trade-secrets claims. The Order reasoned, "[i]n light of the protectable trade secret information, Kumawat is enjoined from performing duties (as detailed below) for Formidium that are similar to the duties that he had performed at NAV." *Id.* at 20. Ultimately, the trade secrets claims were a premise for every aspect of the injunction, and no part of the injunction was ordered solely because of the Agreement's restrictive covenant. What's more, given the evidence proffered by NAV

18

on the contempt and sanctions motion, the Preliminary Injunction Order remains necessary to preserve the status quo.

## IV. Conclusion

NAV's motion for attorneys' fees and costs is denied at this stage of the litigation. The Court order s an evidentiary hearing to address the motions for contempt and sanctions. The courtroom deputy will contact the parties to discuss scheduling. The Preliminary Injunction Order remains in effect.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 28, 2024